TOWN OF CASCADE, RESPONDENT, *v.* COUNTY OF CAS-
CADE ET AL., APPELLANTS.

(No. 5,857.)

(Submitted January 11, 1926. Decided January 28, 1926.)

[243 Pac. 806.]

*Taxation—Exemptions—Constitution—Municipal Corporations
—Trusts—Charities—Implied Findings—Pleading and Prac-
tice—General Demurrer—Does not Lie, When.*

Taxation—Exemptions—Constitution—Strict Construction.
   1. Section 2, Article XII, Constitution, prescribing the property which shall be absolutely exempt from taxation and the class which may be exempt if exclusively used for certain designated purposes, must be strictly construed.

Trusts—Separation of Legal Estate from Equitable Title Essential Element.
   2. A fundamental essential to the existence of a trust is the separation of the legal estate from the beneficial enjoyment, *i. e.,* the equitable title to the subject matter of the trust, which is vested in the person for whose benefit the trust is created—the *cestui que trust.*

Taxation—Property Willed to Town for Public Purpose Exempt.
   3. Where a mortgagee bequeathed a sum of money and a mortgage on land for town library purposes, the will providing that the trust fund thus created should be administered by trustees for the use and benefit of the town, and the mortgagor in lieu of foreclosure

---

1. Construction of tax exemption laws, see note in 60 L. R. A. 38. See, also, 26 R. C. L. 313.
2. See 26 R. C. L. 1186.

gave a deed for the property to the trustees of the town—the *cestui que trust*—the property became that of the town, and not that of the trust, and was therefore exempt from taxation under section 2, Article XII, of the Constitution.

Same—Exemptions Include All Kinds of Property.
4. The constitutional provision (sec. 2, Art. XII) prescribing what property shall or ·may be exempt from taxation, *held* broad enough to include every kind of property—real, personal and mixed—capable of private ownership, under the definition of "property" contained ·in section 17 of the same Article; therefore the contention that, under a strict construction, it must be construed as meaning the unqualified ownership of land merely has no merit.

Same—Property Willed to Town in Trust—Capacity of Municipality to Accept.
5. Where at the time of the death of a testator who bequeathed property to a town for library purposes the law did not provide a method by which the municipality could accept the donation, but later, after the estate had been distributed and the decree of distribution had become final by failure of appeal therefrom and the trust created thereby became effective, the legislature enacted a statute under which a town could accept, the trust was not subject to attack on the ground of the town's former incapacity to accept.

Same—Injunction—Implied Findings.
6. In an action for an injunction to prohibit the sale of property for delinquent taxes in which no request for findings of fact were made or requested, the appeal being taken on the judgment-roll alone, every finding necessary to support the judgment will be implied under the doctrine of implied findings.

Pleading and Practice—Complaint Containing Good and Bad Allegations— General Demurrer· Does not Lie.
7. A general demurrer to the complaint in its entirety, certain allegations of which are good, entitling plaintiff to relief, is properly overruled, though others may have been bad.

---

[1] Taxation, 37 **Cyc.**, p. 892, n. 43.
[2] Towns, 38 **Cyc.**, p. 596, n. 1.  Trusts, 39 **Cyc.**, p. 17, n. 4; p. 18, **n.** 11; p. 19, n. 21; p. 202, n. 85.
[3] Taxation, 37 **Cyc.**, p. 875, n. 15.  Towns, 38 **Cyc.**, p. 596, n. 1.
[4] Ownership, 29 **Cyc.**, p. 1550, n. 28 New.  Property, 32 **Cyc.**, p. 648, n. 13.  Taxation, 37 **Cyc.**, p. 908, n. 32; p. 909, n. 42 New.  Trusts, 39 **Cyc.**, p. 203, n. 96.
[5] Towns, 38 **Cyc.**, p. 634, n. 53 New.
[6] Appeal and Error, 4 **C. J.**, sec. 2728, p. 778, n. 78, 79.
[7]. Pleading, 31 **Cyc.**, p. 329, n. 61.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

---

4. Exemption from taxation of lands owned by governmental bodies or in which they have an interest, see note in 132 **Am. St. Rep.** 291.
5. Power of municipality to accept and administer trust for library,· see notes in 17 **Ann. Cas.** 748; 10 **A. L. R.** 1377.

ACTION by the Town of Cascade against Cascade County and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Mr. H. R. Eickemeyer, Mr. La Rue Smith* and *Mr. W. P. Costello,* for Appellants, submitted a brief; *Mr. Costello* argued the cause orally.

*Mr. Ralph E. Bancroft,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment and decree declaring the levy of certain taxes on real property in Cascade county vacated, canceling a certificate of sale and enjoining the officials of the defendant county from selling such property for delinquent taxes.

It appears from the complaint that the land in question stands of record in the name of three individuals, and was acquired in the following manner: One August Wedsworth died testate in Cascade county in 1915; he bequeathed a certain sum in trust for the purpose of establishing a library, reading-room and gymnasium in the town of Cascade, provided by will for the appointment of three trustees, in a certain manner, to administer the trust declared, and provided therein that the subject matter of the trust should be known as the "August Wedsworth library and gymnasium fund," and that this fund should be administered "for the use and benefit of the town of Cascade and the inhabitants thereof" in perpetuity. In due time the trustees were duly appointed and entered upon the discharge of their duties. The will was admitted to probate, and the estate duly administered upon and closed. On March 16, 1921, by final order and decree of distribution, the assets thus bequeathed were distributed to the

trustees, with directions to administer the trust in conformity with the directions of the testator.

Among the assets thus distributed was a mortgage upon approximately 2,760 acres of land in Cascade county. On January 5, 1922, the mortgagor, being unable to meet his obligation, conveyed the land by warranty deed, absolute upon its face, to the three individuals so appointed and acting as trustees, designating them as "trustees of the town of Cascade." This deed is attached to and made a part of the complaint. It is in the usual form of warranty deed, and conveys the land, "together with  *  *  *  the rents, issues and profits thereof; and also all the estate, right, title, interest *  *  *  possession, claim and demand,  *  *  *  as well in law as in equity  *  *  *  of the party of the first part, and warrants  *  *  *  the quiet and peaceable possession thereof, unto the said parties of the second part."

It is alleged in the complaint that, by agreement, the grantor was to hold possession of the land, rent free, for the usual period of redemption on foreclosure, but no such condition appears in the deed. The complaint alleges that the defendant county has pretended to tax the land so acquired for the years 1922, 1923 and 1924, and that such taxes are void for the reason that the land is the property of the town of Cascade, and as such is exempt from taxation; that for the delinquent taxes for the year 1922 the property was struck off to the county, and that the board of county commissioners threaten to sell the land at public auction.

A general demurrer was interposed to the complaint and by the court overruled. Thereafter the defendants answered, denying generally those allegations of the complaint referring to the acquisition of title to the lands and the invalidity of the tax. The action was tried to the court, and resulted in the judgment above referred to.

The judgment-roll alone is before us, and the only specification of error made reads as follows: "The court erred in

overruling the demurrer to the complaint and in giving judgment against the appellants, for the reason that the complaint does not state facts sufficient to constitute a cause of action or to support the judgment." The grounds on which it is contended that the court so erred are that the complaint shows on its face that the lands in question are not the property of the town of Cascade, but belong to the "August Wedsworth library and gymnasium fund," and that if this is found not to be a correct interpretation of the provisions of the will, still the town of Cascade has no such ownership of the land as to exempt it from taxation.

The question of ownership is all-important in this case, [1] for the reason that section 2 of Article XII of our state Constitution declares: "The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries shall be exempt from taxation; and such other property as may be used exclusively [for certain designated purposes] may be exempt from taxation."

This section contains two classes of exempted property, the first of which is absolutely exempt, regardless of the question of exclusive use, while the second class is exempt only if exclusively used for the purposes mentioned. (*Montana Catholic Missions* v. *Lewis and Clark County*, 13 Mont. 559, 22 L. R. A. 684, 35 Pac. 2.) The section is to be strictly construed, and contains a description of all property which may be exempted from taxation. (*Cruse* v. *Fischl*, 55 Mont. 258, 175 Pac. 878.)

1. Counsel for defendant assert that the deed described [2, 3] above should have run to the grantees named, not as "trustees of the town of Cascade," but as trustees for the "August Wedsworth library and gymnasium fund," but suggests that the wording of the deed presents no difficulty, as, in equity, "that which ought to have been done is to be regarded as done." (Sec. 8758, Rev. Codes 1921.) We do not question but what the section quoted would warrant the read-

ing of the deed as suggested, providing counsel are correct as to what "ought to have been done" at the time the deed was executed; a careful reading and consideration of the terms of the will creating the trust and the nature of the trust will demonstrate that the deed should not have been drawn as suggested by counsel.

"A fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment." (26 R. C. L. 1196; *Doan* v. *Parish of Ascension,* 103 Md. 662, 115 Am. St. Rep. 379, 7 L. R. A. (n. s.) 1119, 64 Atl. 314, and note; *Hospes* v. *Northwestern Mfg. Co.,* 48 Minn. 174, 31 Am. St. Rep. 637, 15 L. R. A. 470, 50 N. W. 1117.) This "beneficial enjoyment," or, in other words, the equitable title to the subject matter of the trust, is vested in the person for whose benefit the trust is created, known as the *cestui que trust.* (*Dillenbeck* v. *Pinnell,* 121 Iowa, 201, 96 N. W. 860.)

For whose benefit was this trust created? Surely not for the "August Wedsworth library and gymnasium fund"; the "fund" is but the subject matter of the trust, legal title to which is vested in the trustees, for the use and benefit of the "town of Cascade and its inhabitants," who are entitled to the beneficial enjoyment of the fund thus created and set aside for the purposes designated. The "town" is but "an assemblage of inhabitants living in the vicinity of each other and not separated by any other intervening * * * division of the state" (*Smith* v. *Sherry,* 50 Wis. 210, 6 N. W. 561; *Town of Enterprise* v. *State,* 29 Fla. 128, 10 South. 740), and when organized as a municipal corporation such step is taken "for the purpose, mainly, that the people within their territorial limits may thereby be enabled, for their own interest and advantage, to administer their local and internal concerns; or, in other words, that they may have the power of local self-government." (*Logan City* v. *Buck,* 3 Utah, 301, 2 Pac. 706.)

For the purposes of the trust created by the will of August Wedsworth, the town of Cascade and its inhabitants are one and the same entity, and this entity is the *cestui que trust.*

2. The defendants contend that, if this be true, still the [4] land is not the "property" of the town, as, under a strict construction of the Constitution, the term must be construed in its narrow sense as meaning the unqualified ownership of the land.

The Article of our Constitution above referred to defines "property" as the term is used therein, to include "moneys, credits, bonds, stocks, franchises and all matters and things (real, personal and mixed) capable of private ownership." (Sec. 17, Art. XII.) "Ownership of a thing" is defined in our statutes as "the right of one or more persons to possess and use it to the exclusion of others." (Sec. 6663, Rev. Codes 1921.) The constitutional provision is sufficiently broad to cover all manner of property as defined above, which may be possessed and used, under the above definition of "ownership."

But a trustee of property conveyed to him for the purpose of carrying out the trust declared does not possess and use the property to the exclusion of others, in the sense that that phrase is used in the above definition; he is but the holder of the legal title. "His is not a property right, but a legal duty founded on personal confidence; his estate is not that which can be enjoyed, but a power that may be exercised" (*Arnold* v. *Southern Pine Lumber Co.,* 58 Tex. Civ. App. 186 [1909], 123 S. W. 1162), "the equitable estate and beneficial interest, the use and enjoyment of the property or its proceeds, is in the *cestui que trust*" (Blackstone's Commentaries, 328; *Blake* v. *O'Neal,* 63 W. Va. 483, 16 L. R. A. (n. s.) 1147, 61 S. E. 410, "and, under the system now generally prevailing, the *cestui que trust* is regarded as the real owner of the property" (39 Cyc. 203).

Speaking of the equitable estate owned and enjoyed by the *cestui que trust,* the supreme court of California, in the case

of *Title Ins. Co.* v. *Duffill,* 191 Cal. 629, 218 Pac. 14, said:
Such estates ''are in equity 'what legal estates are in law;
the ownership of the equitable estate is regarded by equity
as the real ownership, and the legal estate is, as has been said,
no more than the shadow always following the equitable estate,
which is the substance''—citing 1 Pomeroy on Equity Juris-
prudence, 4th ed., Art. 147; Underhill on Trusts and Trustees,
4th ed., p. 6, Art. 2.    (See, also, *Watson* v. *City of Boston,*
209 Mass. 18, 95 S. E. 302.)

It follows that the town of Cascade, the owner of the equi-
table estate in the ''fund,'' of which a part has been but tem-
porarily, and of necessity, invested in the land in question,
is the owner of this ''property'' within the meaning of the
constitutional provisions quoted above.

3. It is the situation or character of the beneficial owner,
the holder of the equitable title or estate, and not that of
the holder of the legal title, which determines the question
of exemption from taxation under our constitutional provi-
sions and those of like import.    (*Norton's Exrs.* v. *City of*
*Louisville,* 118 Ky. 836, 82 S. W. 621; *Watson* v. *City of*
*Boston, supra; Montgomery* v. *Wyman,* 130 Ill. 17, 22 N. E.
845; *Ellsworth College* v. *Emmett County,* 156 Iowa, 52,
42 L. R. A. (n. s.) 530, 135 N. W. 594; *People ex rel. William-*
*son County* v. *City of Toulon,* 300 Ill. 408, 133 N. E. 709;
*Passaic Valley Sewerage Commrs.* v. *Mayor of Jersey City,*
93 N. J. L. 427, 108 Atl. 233.)

It seems, therefore, clear that trust funds and trust property
generally, while in the hands of the trustees for the beneficial
use and enjoyment of a town within the state of Montana,
under our present law, must be free from taxation by virtue
of the provisions of section 2, Article XII, of the Constitution.
The authorities last cited above support this statement.

4. Defendants, however, insist that at the time of the death
[5] of August Wedsworth the town was not authorized by law
to accept such a bequest.    This is true, as sections 5043 and

5044, Revised Codes of 1921, by which organized cities and towns are now empowered to accept, receive, own and possess any gift, bequest or donation of any property, real, personal or mixed, was first enacted as Chapter 10 of the Session Laws of 1917, two years after the death of Wedsworth; but this provision was in full force and effect at the time the decree of distribution was made and entered in 1921. The decree, as entered, carried out the wish of the testator as expressed in his will, and distributed the property to the trustees in fulfillment of the trust created, and for the first time, in 1921, the trust became active. Under section 10328, Revised Codes of 1921, the decree is conclusive "as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." No appeal was taken from the decree.

In California, under a like statute, it has been repeatedly held that under these circumstances the validity of the trust is no longer open to question. Thus, in *Keating* v. *Smith,* 154 Cal. 186, 97 Pac. 300, the court declared: "The decree of the superior court distributing the residue of the estate to trustees upon certain trusts is a conclusive adjudication of the validity of the disposition made by the testator. (*Crew* v. *Pratt,* 119 Cal. 139, 51 Pac. 38; *Goldtree* v. *Allison,* 119 Cal. 344, 51 Pac. 561.) And it is equally conclusive as an ascertainment and adjudication of the terms of the trust, and of the rights of all parties claiming any legal or equitable interest under the will. (*Goad* v. *Montgomery,* 119 Cal. 552, 63 Am. St. Rep. 145, 51 Pac. 681; *Williams* v. *Marx,* 124 Cal. 22, 56 Pac. 603; *More* v. *More,* 133 Cal. 489, 65 Pac. 1044.) The decree supersedes the will; * * * we are, therefore, to look, not to the terms of the will, but to those of the decree of distribution." This declaration is followed in *Luscomb* v. *Fintzelberg,* 162 Cal. 433, 123 Pac. 247, *Wills* v. *Wills,* 166 Cal. 529, 137 Pac. 249, *Miller* v. *Pitman,* 180 Cal. 540, 182 Pac. 50, and *In re Scrimger's Estate,* 188 Cal. 158, 206 Pac. 65.

In answer to the contention here made, after an exhaustive analysis of the authorities, the supreme court of Colorado held that, since the legislature had meanwhile given the city the proper authority, the trust could not be defeated by any incapacity in the city at the time of the testator's death. (*Clayton* v. *Hallett,* 30 Colo. 231, 97 Am. St. Rep. 117, 59 L. R. A. 407, 70 Pac. 429.)

In *Hatheway* v. *Sackett,* 32 Mich. 99, it appears that one Hatheway died in 1871, bequeathing a certain sum to the village of New Baltimore for a designated purpose. In 1873 the legislature of Michigan passed an Act (Acts Loc. & Personal 1873, No. 322), enabling the village to accept the bequest. The bequest was upheld upon the ground that authority was vested in the village to accept at the time of distribution.

In the case at bar, the town of Cascade was capable of receiving and accepting the equitable title to the land in question at the time the decree of distribution was made and entered; the decree was a judicial construction of the will (*Miller* v. *Pitman, supra*), and is conclusive as to the validity of the trust created, and it is therefore immaterial that, at the time of the death of the testator, the town may not have had authority or capacity to accept a gift or bequest.

5. Defendants assert, however, that the judgment is erro-
[6] neous for the reason that it appears that the town did not have the beneficial use of the property for the year 1922.

As heretofore pointed out, there is nothing in the deed to indicate that the trustees did not secure the immediate possession of the premises on January 5, 1922; the only suggestion to the contrary is found in the allegation of the complaint that prior to the execution of the deed it was agreed that the grantor should have the possession of the premises for that year free of rent. Had proof been adduced in support of this allegation and had the court so found, it may be that the property was assessable to someone for the year 1922, but this case is before us only on the judgment-roll; we have no

intimation as to what evidence was introduced other than the recitation in the judgment that "oral and documentary evidence" was introduced. No findings of fact were requested or made.

Under these circumstances, "every finding necessary to support the judgment of the court will be implied on appeal." (*Steiner* v. *McMillan,* 59 Mont. 30, 195 Pac. 836; *Croft* v. *Bain,* 49 Mont. 484, 143 Pac. 960; *Boe* v. *Hawes,* 28 Mont. 201, 72 Pac. 509; *Currie* v. *Montana Central Ry. Co.,* 24 Mont. 123, 60 Pac. 989.)

Under the doctrine of implied findings, we must presume that the court found from the evidence that no such agreement was entered into, and that the trustees entered into possession of the property at the time the deed purported to grant to them, and to warrant in them, the immediate possession of the premises and "the rents, issues and profits thereof."

6. Nor are the defendants aided on their demurrer by the [7] allegation in the complaint of the agreement above referred to. The demurrer was a general demurrer. If the complaint was bad as to the allegations concerning taxes for the year 1922, it was good as to those concerning the taxes for the years 1923 and 1924, and the demurrer was therefore properly overruled. (*Rumney* v. *Skinner,* 64 Mont. 75, 208 Pac. 895; *Stadler* v. *City of Helena,* 46 Mont. 128, 127 Pac. 454; *Cassidy* v. *Slemons & Booth,* 41 Mont. 426, 109 Pac. 976; *Solem* v. *Connecticut Fire Ins. Co.,* 41 Mont. 351, 109 Pac. 432; *Donovan* v. *McDevitt,* 36 Mont. 61, 92 Pac. 49; *Collier* v. *Ervin,* 2 Mont. 335.)

The court did not err as to the matters specified. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.