No. 05-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 267

JIM ELLIOTT,

       Petitioner and Appellant,

   v.

MONTANA DEPARTMENT OF REVENUE,

       Respondent and Respondent,

and

MONTANA TAXPAYERS' ASSOCIATION,

       Intervenor.

APPEAL FROM:    The District Court of the First Judicial District,
                    In and For the County of Lewis and Clark, Cause No. CDV 2004-777,
                    Honorable Thomas C. Honzel, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Peter Michael Meloy (argued), Robin A. Meguire, Meloy Trieweiler,
           Helena, Montana

       For Respondent:

           David L. Ohler (argued), Special Assistant Attorney General,
           Helena, Montana

       For Intervenor:

           John Alke (argued), Cherche Prezeau, Hughes, Kellner, Sullivan & Alke,
           Helena, Montana

For Amicus Curiae:

Elizabeth L. Griffing, Visiting Assistant Professor, University of Montana School of Law, Missoula, Montana

Heard at Oral Argument:  May 3, 2006
Submitted:  June 13, 2006
Decided:  October 24, 2006

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      State Senator Jim Elliott (Elliott) requested certain state tax information from the Montana Legislative Auditor (Auditor) for "C" corporations doing business in Montana. The Auditor, based on information provided by the State Department of Revenue (DOR), compiled the requested information for tax year 2002 and provided it to Elliott. Later, DOR denied the Auditor and Elliot access to similar tax information for other tax years. Elliott filed a Petition to Obtain Public Documents (Petition), which the District Court denied. Elliott appeals. We affirm.

## ISSUE

¶2      The restated issue on appeal is:

Did the District Court err when it denied public disclosure of Montana "C" corporations' state tax records?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      In January 2004, Elliott, in his capacity as Chairman of the Senate Taxation Committee and Vice-chairman of the Legislative Audit Committee, requested tax information for "C" corporations with $1,000,000.00 or more in Montana sales for all tax years for which DOR had the information. Elliott sought the information because he believed a "responsible legislator needs to be informed so as to make responsible and accurate decisions on the part of the public."

¶4      Initially, Elliott asked the Auditor to provide him with tax information about all corporations that paid less than $150.00 in Montana taxes in 2002. After inspecting the information, Elliott requested tax information for the top 500 "C" corporations in terms

3

of Montana sales.  (*See* "C" corporation definition at § 15-30-101(3), MCA.)  DOR provided the information to the Auditor on Elliott's behalf.  The Auditor compiled for Elliott spreadsheets containing information for tax year 2002. Corporate taxpayers, however, were not identified by name on the spreadsheets.

¶5     Elliott then researched the identities of some of the corporations by matching up the tax information he received for 2002 with financial information he located on the internet from such sources as the U.S. Securities Exchange Commission's published filings and corporate financial reports.  Elliott disclosed the results of his research to his constituents and other Montana citizens.

¶6     Elliott testified that "the compelling reason for the people of the state of Montana [to have access to state corporate tax records] is that a just, equitable taxation policy is important.  For every dollar that one person avoids illegally . . . in paying taxes, the citizens of the state of Montana make up for that in increased taxes or in decreased services."  Subsequently, Elliott reiterated his request for tax records from all available tax years.  DOR refused Elliott's request because he had disclosed to the public corporate tax information previously provided.

¶7     Elliott petitioned the District Court to order disclosure of the state corporate tax records.  On April 6, 2005, the District Court denied Elliott's Petition after holding an evidentiary hearing on November 23, 2004, and oral arguments on February 11, 2005.  Elliott appeals.

**STANDARD OF REVIEW**

¶8      We review a district court's conclusion of law regarding a constitutional question to determine whether it is correct.  *Bryan v. District,* 2002 MT 264, ¶ 16, 312 Mont. 257, ¶ 16, 60 P.3d 381, ¶ 16.

**DISCUSSION**

¶9      *Did the District Court err when it denied public disclosure of Montana "C" corporations' state tax records?*

¶10     Elliott invokes the right to know provisions of Article II, Section 9, of the Montana Constitution in support of his contention that state corporate tax records are subject to public disclosure.  Article II, Section 9 provides:

> **Right to know.**  No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

However, state law prohibits the disclosure of tax records provided to DOR by Montana corporate taxpayers.  Section 15-31-511, MCA, provides:

> **Confidentiality of tax records.**  (1) Except as provided in this section in accordance with a proper judicial order or as otherwise provided by law, it is unlawful to divulge or make known in any manner:
>         (a) the amount of income or any particulars set forth or disclosed in any return or report required under this chapter or any other information relating to taxation secured in the administration of this chapter; or
>         (b) any federal return or information in or disclosed on a federal return or report required by law or rule of the department of revenue under this chapter.

¶11     In briefs to this Court, Elliott highlights the conflict between the provisions of Article II, Section 9, and § 15-31-511, MCA, but dismisses the statute by arguing that,

"Obviously, state statutory law must yield to constitutional law." We agree with this cardinal premise. However, statutes are presumed constitutional absent proof beyond a reasonable doubt to the contrary. *Ravalli County v. Erickson*, 2004 MT 35, ¶ 17, 320 Mont. 31, ¶ 17, 85 P.3d 772, ¶ 17 (citation omitted).

¶12 Notably, Elliott has mounted no constitutional challenge—either facial or as applied—to invalidate § 15-31-511, MCA. Indeed, Elliott's counsel stated unequivocally, both in briefs to this Court and during oral argument, that Elliott does *not* challenge the constitutionality of the statutory prohibition on disclosure of corporate tax information. Rather, he views the statute as "a nullity" in light of case law interpreting Article II, Section 9.

¶13 Elliott seeks precisely the information the disclosure of which is directly prohibited by § 15-31-511(1), MCA. Elliott asked the District Court to order disclosure of information for "C" corporations with $1,000,000.00 or more in Montana sales, including: the name of the corporation; Montana sales; total sales; Montana property; total property; Montana payroll; total payroll; apportionment factor; adjusted taxable income; Montana taxable income before net operating loss; Montana taxable income; Montana corporate tax liability; and the date the tax return was received. While Elliott concedes the statute prohibits such disclosure, he maintains that the constitutional right to know in essence "trumps" these statutory restrictions, and that we may so rule without *per se* declaring the statute unconstitutional.

¶14 The Legislature has exercised its constitutional power to enact a statute. Article V, Section 1, Montana Constitution. The role of the courts in construing a statute is well

6

established.  We are to ascertain a statute's terms and substance, but we are not to insert what has been omitted or omit what has been inserted.  Section 1-2-101, MCA.  Thus, we may not simply disregard the provisions of a duly enacted statute unless we first conclude that it is unconstitutional.

¶15    As already stated, the unconstitutionality of a statute must be demonstrated beyond a reasonable doubt.  *Ravalli County*, ¶ 17.  In that no demonstration of unconstitutionality has been offered—much less proven—here, we may not declare this statute unconstitutional, nor will we undertake to do so *sua sponte*.  Absent a successful constitutional challenge to the propriety of a statute, we are obligated to apply it.  *State v. Finley*, 276 Mont. 126, 149, 915 P.2d 208, 223 (1996) (*Gray, J., specially concurring*).

¶16    Without a direct constitutional challenge to § 15-31-511, MCA, we have no basis for confronting, much less disturbing, its prohibition on disclosure of state corporate tax records.  Therefore we conclude we cannot grant the relief Elliott seeks.

## CONCLUSION

¶ 17    For the foregoing reason, we affirm.

/S/ PATRICIA COTTER

7

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JAMES C. NELSON

/S/ MARC G. BUYSKE
District Court Judge Marc G. Buyske
sitting for Justice Brian Morris

Justice John Warner concurs.

¶18    I concur with the result of the Court's opinion.  I write to address the reason Elliott claims it is not necessary to find § 15-31-511, MCA, unconstitutional in order to secure the tax information he prays for.

¶19    Senator Elliott argues the "or as otherwise provided by law" exception in § 15-31-511(1), MCA, renders the statute ineffective because "law" includes Article II, Section 9 of the Montana Constitution.[1]

¶20    Section 15-31-511(1), MCA, provides:

---

[1] This argument is clearly articulated in Elliot's opening brief to the District Court, as well as his appellate briefs and oral argument before this Court.

Except as provided in this section in accordance with a proper judicial order *or as otherwise provided by law*, it is unlawful to divulge or make known in any manner[.]

(Emphasis added.) Elliott points out that the "or as otherwise provided by law" exception in § 15-31-511, MCA, encompasses the Montana Constitution's Right to Know provision, Article II, Section 9, which is set forth at ¶ 10 of the Court's Opinion. Although what constitute "documents . . . of all public bodies" is not defined in Article II, Section 9, this Court has interpreted the phrase to encompass "documents generated or maintained by a public body which are somehow related to the function and duties of that body." *Becky v. Butte-Silver Bow Sch. Dist. No. 1*, 274 Mont. 131, 138, 906 P.2d 193, 197 (1995). Thus, Article II, Section 9, is applicable to "public documents." *Becky*, 274 Mont. at 138, 906 P.2d at 197.

¶21 The only limitation on the constitutional right to view public documents, according to Elliott, is an individual's constitutional right to privacy. Elliott goes on to point out that this Court has held that a for-profit corporation has no individual right to privacy under the Montana Constitution. *Great Falls Tribune v. Mont. Pub. Serv. Commn.*, 2003 MT 359, ¶ 39, 319 Mont. 38, ¶ 39, 82 P.3d 876, ¶ 39. Thus, Elliott adroitly argues that there is a loop-hole in the law which requires that the public be able to examine a for-profit corporation's tax records. This is because Article II, Section 9, is a law which provides that the tax records of for-profit corporations are available to the public, and thus the exception in § 15-31-511(1), MCA, applies to abrogate the statute's requirement of confidentiality.

9

¶22 Under this interpretation, the exception in § 15-31-511(1), MCA, would render the statute ineffective. Elliott's counsel did not dispute this conclusion at oral argument, and acknowledged that the exception essentially swallows the statute. He pointed out, however, that the statute was effective until this Court's decision in *Great Falls Tribune*.[2]

¶23 I do not conclude that the exception to § 15-31-511(1), MCA, renders the statute without effect. An interpretation that gives effect to a statute is always preferred to one that makes a statute void or treats a statute as mere surplusage. *Missoula Rural Fire Dist. v. Missoula Co.*, 222 Mont. 178, 182, 720 P.2d 1170, 1173 (1986).

¶24 Even assuming, *arguendo*, that under *Great Falls Tribune* a for-profit corporation has no privacy interest to be weighed against the public's right to know, the analysis does not end there. The right to privacy is not the only constitutional provision that may circumscribe the right to know provided by Article II, Section 9.

¶25 In *State ex rel. Smith v. Dist. Ct.*, 201 Mont. 376, 654 P.2d 982 (1982), this Court considered whether the right to know could be circumscribed by the right to a trial by an impartial jury. We explained in *Smith*:

> the "Right to Know" provision of the Montana Constitution . . . is not absolute. It can be properly circumscribed when the right or interest against which it competes is *weighty or compelling*.

*Smith*, 201 Mont. at 383, 654 P.2d at 986 (emphasis added). In *Smith*, this Court held that a pretrial suppression hearing could be excluded from the public eye "only if

---

[2] *Mt. States Tel. and Telegraph Co. v. Dept. of Pub. Serv. Reg.*, 194 Mont. 277, 288, 634 P.2d 181, 188 (1981) (assuming the framers of Article II, Sections 9 and 10 surely intended non-human entities to have the same constitutional rights to privacy as do human individuals). *Mt. States* was overruled by *Great Falls Tribune*, ¶ 38.

dissemination of information acquired at the hearing would create a clear and present danger to the fairness of defendant's trial and no reasonable alternative means can be utilized to avoid the prejudicial effect of such information." *Smith*, 201 Mont. at 385, 654 P.2d at 987.

I acknowledge that in *Great Falls Tribune Co., Inc. v. Great Falls Pub. Schools*, 255 Mont. 125, 841 P.2d 502 (1992), this Court concluded that "pursuant to the clear language of Article II, Section 9, meetings may be closed *only* when the need for individual privacy exceeds the merits of public disclosure." *Great Falls Pub. Schools*, 255 Mont. at 131, 841 P.2d at 505 (emphasis added); *Cf., In re Lacy*, 239 Mont. 321, 325, 780 P.2d 186, 188 (1989) ("The *only* limitation on the right to receive this information is the constitutional right to privacy.") (emphasis added). In my view, these statements, that it is only the right to individual privacy that can circumscribe the public's right to know, are both overbroad and unnecessary. Neither *Great Falls Pub. Schools* nor *Lacy* involved matters other than whether an individual's right to privacy outweighed the public's right to know. In *Great Falls Pub. Schools* the Court did not overrule, nor did it discuss, *Smith*. The Court has continued to cite to the language in *Smith* that the right to know "can be properly circumscribed when the right or interest against which it competes is weighty or compelling." *E.g., Great Falls Tribune*, ¶ 30 (quoting *Smith*, 201 Mont. at 383, 654 P.2d at 986). The rule in *Smith* should control in this case and I would overrule *Great Falls Pub. Schools* to the extent it suggests that it is only the right to privacy that may circumscribe the right to know.

11

¶26     In the present case, Elliott's argument necessarily raises the issue of whether the State's authority to tax, and its ability to enforce this authority, which is provided for by Article VIII of the Montana Constitution, is so sufficiently "weighty or compelling" that it may in appropriate circumstances circumscribe the right to know. *See Lacy*, 239 Mont. at 326, 780 P.2d at 189 (because the judiciary has authority over the interpretation of the Constitution, it is the courts' duty to balance the competing interests at issue in order to determine what, if any, information should be given to a party requesting information from the government under Article II, Section 9).

¶27     The U.S. Supreme Court has long recognized the importance of the power to tax:

> It is admitted that the power of taxing the people and their property, is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it.

*McCulloch v. Maryland*, 17 U.S. 316, 428 (1819). Article VIII of the Montana Constitution gives the Legislature the power to tax. At the 1972 Montana Constitutional Convention, the Revenue and Finance Committee went so far as to suggest that putting such a power in the Constitution was unnecessary, because "the power to tax is an inherent power of the state, a power already possessed by the state without any grant of authority." Montana Constitutional Convention, Revenue and Finance Committee Proposal, February 18, 1972, p. 579. In discussing Article VIII, Section 2, Delegate Rygg stated: "Of course, the power of taxation is the most important power a governmental body possesses, and it is equally important that this power never be treated

12

lightly or bargained away." Montana Constitutional Convention, Verbatim Transcript, March 3, 1972, p. 1379.

¶28    The State requires revenue to provide for the common good, and taxation is of course necessary to raise this revenue. Without the power to tax, the government could not protect the right to know, the right of individual privacy, or any of the fundamental rights of the people. Therefore, I conclude that the State's interest in enforcing its authority to tax is sufficiently "weighty or compelling" that it may, in limited and appropriate circumstances, circumscribe the right to know.

¶29    The record establishes that it is a critical component of the current corporate tax structure of Montana that the United States Internal Revenue Service (I.R.S.) provide information contained in United States corporate tax returns to the Montana Department of Revenue. The system would simply not work without such information. 26 U.S.C. § 6103(p)(8) prohibits the I.R.S. from disclosing information about a federal tax return to any State unless that State adopts a confidentiality provision such as § 15-31-511, MCA. Thus, if this Court were to conclude that § 15-31-511 is of no effect, it follows that the I.R.S. would stop providing information to DOR, and the current Montana system for levying taxes on for-profit corporations would fail.

¶30    The record also establishes that Montana does not have the resources to establish a tax system which could effectively compile and process the necessary information to levy and collect taxes from the many for-profit corporations that do business in this State, without tax information gathered and provided by the I.R.S.

¶31 I conclude that in this limited circumstance, the confidentiality provisions of § 15-31-511, MCA, which flow from Article VIII of the Montana Constitution, are sufficiently weighty and compelling to circumscribe the public's right to know provided in Article II, Section 9.

¶32 It is for this reason that I vote to affirm the judgment of the District Court.

/S/ JOHN WARNER